Raul RIOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–06–00035–CR.

Court of Appeals of Texas,
Waco.

June 27, 2007.

Discretionary Review Refused
Oct. 31, 2007.

Walter M. Reaves, Jr., Attorney At Law, West, TX, for appellant.

John W. Segrest, McLennan County Dist. Atty., Waco, TX, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Raul Rios appeals his conviction for aggravated kidnapping, challenging: (1) the admission of a prior conviction (two points); (2) the admission of letters from the victim; and (3) the legal and factual sufficiency of the evidence (two points). We affirm.

## LEGAL AND FACTUAL SUFFICIENCY

We begin with Rios's fourth and fifth points in which he contends that the evidence is legally and factually insufficient to sustain his aggravated kidnapping conviction.

### Applicable Law

Under legal sufficiency review, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim. App.2000) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *see also Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry,* 30 S.W.3d at 406; *Matson,* 819 S.W.2d at 843.

Under factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim.App.2000). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson,* 23

S.W.3d at 7. We do not indulge in inferences or confine our view to evidence favoring one side. Rather, we look at all the evidence on both sides and then make a predominantly intuitive judgment. *Id.*

■ A person commits aggravated kidnapping if he intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense. *Hines v. State*, 75 S.W.3d 444, 446 (Tex.Crim.App.2002) (citing TEX. PEN.CODE ANN. 20.04(b) (Vernon 2003)). "Abduct" means to restrain a person with intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found; or using or threatening to use deadly force. TEX. PEN.CODE ANN. 20.01(2) (Vernon Supp.2006). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. TEX. PEN.CODE ANN. 20.01(1) (Vernon Supp. 2006). Restraint is without consent if accomplished by force, intimidation, or deception. TEX. PEN.CODE ANN. 20.01(1)(A) (Vernon Supp.2006).

## Factual Background

Rios and Ginger Lopez were in a relationship that ended prior to the offense. Lopez's husband was incarcerated. On the day of the offense, while at her cousin's home, Lopez and Juan Cabriales were listening to music in Lopez's car when Carbriales observed Rios approach the vehicle. Rios entered the vehicle and accused Lopez of having a relationship with Cabriales. Cabriales exited the vehicle. Lopez could not exit the vehicle because the driver door did not open from the inside.

Rios moved to the passenger seat, placed a pair of scissors against Lopez's neck, and threatened to kill her. Rios held the scissors against Lopez's neck while she drove. At one point, Lopez stopped the car in the middle of traffic to defend herself. When Rios later became distracted, Lopez drove to a police station and honked the horn. Rios hit the gas pedal and stated that, "if he went to jail, he was going to go for something major, not for beating [Lopez] up." He refused Lopez's requests to either exit the vehicle or allow Lopez to exit the vehicle.

Rios ordered Lopez to drive to his sister's home and park behind the home. He pocketed Lopez's car keys. Rios began choking Lopez. Lopez blacked out, but awoke to Rios sprinkling water on her face. Lopez tried to escape, but was caught by Rios who stated that Lopez "was not going nowhere until he was finished with [her]." He forced Lopez to undress and engaged in sexual activity with her.

A man approached the vehicle looking for "Gina." Lopez asked for help. The man told Rios to get off Lopez and walked away. Rios told Lopez to get dressed, placed the scissors against her back, and ordered her inside the home. "Gina" exited as Rios and Lopez entered the home. Rios told Lopez to wash her hands and face. He forced Lopez to call Cabriales to ask whether Lopez had sex with Cabriales. Rios refused to allow Lopez to leave and continued pressing the scissors against her back.

Sarah Tenorio and her boyfriend subsequently arrived at the home.[1] Lopez would not respond to Tenorio. Rios's hand remained behind Lopez's back and he refused to return Lopez's car keys.

---

1. Earlier, Tenorio had been leaving the home when she observed Lopez's car. She saw feet dangling outside the car and presumed Lopez was engaged in sexual activity.

Rios eventually allowed Tenorio to take Lopez to the restroom, after which Tenorio was able to remove Lopez from the home.

After his arrest, Rios contacted Lopez and told her that he had been under the influence of drugs and alcohol and could not recall what happened.[2] Lopez visited Rios in jail on more than one occasion and also met with his attorney. Lopez told Rios's attorney that Rios did not deserve to go to jail for life and die in prison. She denied stating that Rios should not be in jail or that he would not hurt anyone and denied trying to drop the charges. According to Rios's niece, Lopez had mentioned needing to find a way to get rid of Rios because her husband Pedro was being released. Rios's sister-in-law testified that Lopez was afraid of Pedro and would "rather see Roy [Rios] alive in jail than dead out in the world." Pedro denied threatening Lopez or Rios, but admitted telling Lopez that she must end the relationship if she wanted to keep the family together.

## Analysis

■ Rios argues that the evidence is legally and factually insufficient because: (1) he did not have the intent to prevent Lopez's liberation; (2) he did not secrete or hold Lopez in a place where she was not likely to be found; (3) he eventually released Lopez; and (4) Lopez provided inconsistent testimony.

First, Rios intended to prevent Lopez's liberation. By placing scissors against Lopez's neck and threatening to kill her, Rios bound Lopez to follow his command. He thwarted Lopez's attempt to seek help from the police. He took possession of her car keys. In doing so, he used force and intimidation to restrain Lopez's liberty without her consent and exercised continuous "physical control" over her. *Hines*, 75 S.W.3d at 448; *see* TEX. PEN.CODE ANN. 20.01(1). This evidence indicates that Rios had intent to prevent Lopez's liberation. *See* TEX. PEN.CODE ANN. 20.01(2); *see also Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim.App.1998) ("Intent is a matter of fact, to be determined from all of the circumstances").

Second, Rios held Lopez in a place where she was not likely to be found: "an automobile being driven on city streets." *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim.App.1980); *see* TEX. PEN.CODE ANN. 20.01(2). "[T]hat the abduction took place in public does not preclude a jury from concluding appellant intended to secret or hold the victim in [a] place where she was not likely to be found." *Megas v. State*, 68 S.W.3d 234, 241 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

■ Third, Rios's eventual decision to relinquish control over Lopez does not negate the abduction element. "[I]f the actor intended at any time during the restraint to secrete or hold the victim in a place where he is not likely to be found, the offense is complete." *Price v. State*, 35 S.W.3d 136, 140 (Tex.App.-Waco 2000, pet. ref'd) (citing *Santellan v. State*, 939 S.W.2d 155, 162 (Tex.Crim.App.1997)). By the time Rios released Lopez, the abduction had already taken place.

■ Fourth, the jury is the "sole judge of the weight and credibility of witness testimony" and "may choose to believe all, some, or none of it." *Santellan*, 939 S.W.2d at 164; *Perez v. State*, 113 S.W.3d 819, 838 (Tex.App.Austin 2003, pet. ref'd). The jury was free to resolve any inconsis-

---

**2.** Officer Lester Padgett testified that Rios did not appear to be intoxicated at the time of his arrest.

tencies in Lopez's testimony and was entitled to do so in Lopez's favor.

In summary, the evidence is legally and factually sufficient to support the conviction. We overrule points four and five.

## PRIOR CONVICTION

■ In Rios's first and second points, he contends that the evidence is legally insufficient to establish a prior aggravated perjury conviction and the court abused its discretion by allowing the State to introduce the conviction.

■ Texas courts have identified several non-exclusive methods by which to prove a prior conviction. *See Flowers v. State*, 220 S.W.3d 919, 921 (Tex.Crim.App., 2007); *see also Smith v. State*, 998 S.W.2d 683, 687 (Tex.App.-Corpus Christi 1999, pet. ref'd). One method is by "documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted." *Flowers*, 220 S.W.3d at 922. The State must present independent evidence of identification. *See Beck v. State*, 719 S.W.2d 205, 210 (Tex.Crim.App.1986); *see also Griffin v. State*, 181 S.W.3d 818, 820 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

Over Rios's objection, the State introduced a certified copy of a judgment reflecting a conviction for aggravated perjury to support the habitual allegation in the indictment. The judgment contained no photographs or fingerprints establishing that Rios committed the offense. Rios argues that no independent evidence exists to show that he is the person convicted in the perjury judgment. The State argues that it provided independent evidence via a certified penitentiary packet for another prior conviction: delivery of a controlled substance. The indictment in the pen packet contained an enhancement paragraph for the perjury conviction.

Relying on *Zimmer v. State*, Rios responds that "while they [the pen packet and the perjury judgment] probably involve the same person, there is nothing to independently establish that [Rios] was the person convicted of aggravated perjury." In *Zimmer*, the State attempted to use a booking slip to establish a prior conviction. *See* 989 S.W.2d 48, 50 (Tex.App.-San Antonio 1998, pet. ref'd). The slip contained a fingerprint that matched Zimmer's prints, but the judgment lacked fingerprints or a signature. *See id.* The trial court excluded the slip, but admitted the judgment. *See id.* The San Antonio Court found that, without the slip, no evidence established that Zimmer was the same person convicted in the judgment. *See id* at 52. Even if admitted into evidence, the slip showed only that the prints matched and the defendant was *arrested*, not that the arrest resulted in the conviction. *See id.*

Unlike the slip in *Zimmer*, the pen packet was admitted into evidence and establishes an actual conviction. The packet contained a photograph, fingerprints, the indictment, and the judgment. Detective Robert Fuller compared these fingerprints to Rios's known fingerprints and concluded that the two sets were the same. Rios's parole officer, Judy Moss, identified Rios as the man depicted in the photograph. The indictment contained an enhancement paragraph for the perjury conviction and listed Rios's name, Rios's alias "Roy Rios," the cause number, the court, the convicting county, and the date. The judgment states that Rios pleaded "true" to the enhancement and the jury found it to be "true." The information in the perjury judgment mirrors that described by the documents in the pen packet. Accordingly, the packet establishes that Rios was previously convicted of delivery of a con-

trolled substance with a sentence enhanced by the prior aggravated perjury conviction.

In light of this evidence, we cannot say that the State failed to present independent evidence of identification or that the evidence is legally insufficient to establish that Rios is the person previously convicted. *See Beck,* 719 S.W.2d at 210; *see also Griffin,* 181 S.W.3d at 820; *see also Green v. State,* 140 S.W.3d 776, 777–78 (Tex.App.-Eastland 2004, no pet.). The court did not abuse its discretion by admitting the perjury judgment. We overrule Rios's first and second points.

### LETTERS FROM THE VICTIM

■ In Rios's third point, he complains that the court abused its discretion by admitting certain letters into evidence.

■ We review a trial court's decision to admit or exclude evidence for abuse of discretion. *See Martin v. State,* 173 S.W.3d 463, 467 (Tex.Crim.App.2005); *see also Shuffield v. State,* 189 S.W.3d 782, 793 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 127 S.Ct. 664, 166 L.Ed.2d 521 (2006) (citing *Rachal v. State,* 917 S.W.2d 799, 816 (Tex.Crim.App.1996)). "If the trial court's decision was within the bounds of reasonable disagreement, the appellate court should not disturb its ruling." *Shuffield,* 189 S.W.3d at 793.

On cross-examination, Rios asked Lopez to identify the dates on some letters she sent to Rios. Lopez admitted sending the letters to Rios while he was in jail. Rios questioned Lopez about certain statements in the letters, such as "sweetie," "love," and "Your Sweetie is thinking of you," and asked if the letters were "love notes." Lopez answered questions about a letter addressing her attempt to visit Rios in jail and complaint that she was not on his visitors list. Rios introduced photos that Lopez sent with the letters. Over Rios's objection, the court ordered the letters produced to the State under the rule of optional completeness. The State introduced redacted versions of the letters into evidence and asked Lopez to read certain portions of the letters. On re-cross, the defense also asked Lopez to read portions of the letters.

■ The rule of optional completeness provides that "when part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other." TEX.R. EVID. 107. This rule "reduce[s] the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Credille v. State,* 925 S.W.2d 112, 116 (Tex.App.Houston [14th Dist.] 1996, pet. ref'd). "[M]erely referring to a statement or a quotation from it does not invoke the rule." *Goldberg v. State,* 95 S.W.3d 345, 387 (Tex.App.Houston [1st Dist.] 2002, pet. ref'd) (citing *Jernigan v. State,* 589 S.W.2d 681, 694–95 (Tex.Crim.App.1979)). Some portion of the matter sought to be "completed" must have actually been introduced into evidence. *See Washington v. State,* 856 S.W.2d 184, 186 (Tex.Crim.App.1993).

In reliance on *Grunsfeld v. State* and *Pinkney v. State,* Rios contends that he did not inquire into the contents of the letters, introduce the letters into evidence, or read the letters into evidence. In *Grunsfeld,* after the defense questioned a police officer about certain statements contained in his report, the State introduced the entire report. *See* 813 S.W.2d 158, 163 (Tex.App.-Dallas 1991), aff'd, 843 S.W.2d 521 (Tex.Crim.App.1992). In *Pinkney,* the defense asked a witness about discrepancies in her written statement, and the State then introduced the entire statement. *See* 848 S.W.2d 363, 365–66 (Tex. App.-Houston [1st Dist.] 1993, no writ).

Merely using these documents "for the purposes of cross-examination did not invoke rule 107" and entitle the State to introduce the *entire* document into evidence. *Grunsfeld*, 813 S.W.2d at 163; *see Pinkney*, 848 S.W.2d at 367.

Here, Rios did not merely refer to the letters, but raised the subject of the letters and inquired into specific portions of their content. *See Sauceda v. State*, 129 S.W.3d 116, 122 (Tex.Crim.App.2004); *see also Wintters v. State*, 616 S.W.2d 197, 202 (Tex.Crim.App.1981). In doing so, he entitled the State to introduce those portions of the letters addressing the "*same subject,*" namely the relationship between Rios and Lopez following the offense. *Wintters*, 616 S.W.2d at 202 (emphasis added). The State was not entitled to introduce the letters in their entirety. Thus, unlike in *Grunsfeld* and *Pinkney*, the State introduced redacted versions of the letters. Both the defense and the State participated in deciding which portions to redact. Accordingly, both *Grunsfeld* and *Pinkney* are distinguishable.

Taken out of context, the letters could mislead the jury and leave a false impression as to the subsequent relationship between the parties, the magnitude of the allegations, and the affect of the offense on Lopez. This is particularly true in light of Rios's question: "And you sent him all this stuff after you're saying he's done all these unbelievably despicable things to you; is that correct?" By creating false implications, Rios invited a reply from the State to fully explain the context of the letters. *See Credille*, 925 S.W.2d at 116 (citing *Parr v. State*, 557 S.W.2d 99, 102 (Tex. Crim.App.1977)); *see also Tovar v. State*, 221 S.W.3d 185, 192 (Tex.App.-Houston [1st Dist.], 2006, no pet.); *Bell v. State*, 867 S.W.2d 958, 962 (Tex.App.-Waco 1994, no pet). Moreover, hearsay is admissible "when it goes to clarify other hearsay evidence elicited by the opposition." *Bunton v. State*, 136 S.W.3d 355, 367 (Tex.App.Austin 2004, pet. ref'd).

Therefore, the court's decision to admit the letters was at least within the bounds of reasonable disagreement. *See Credille*, 925 S.W.2d at 116; *see also Shuffield*, 189 S.W.3d at 793. We overrule Rios's third point.

Having overruled Rios's five points of error, we affirm the trial court's judgment.