

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-17-00180-CR

---

ROY LEE WELLS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2016-1203-C1

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

A McClennan County[1] jury convicted Roy Lee Wells of one count of aggravated kidnapping and one count of attempted sexual assault. After a bench trial on the issue of punishment, Wells was sentenced to fifteen years' imprisonment for aggravated kidnapping and ten years' imprisonment for sexual assault. On appeal, Wells argues that the evidence is legally insufficient to support his conviction for aggravated kidnapping and that the trial court violated his Fifth Amendment right to remain silent when it allowed testimony about Wells' post-arrest silence. Because we conclude that (1) legally sufficient evidence supported Wells' conviction for aggravated kidnapping and (2) Wells did not preserve the claimed Fifth-Amendment error, we affirm the trial court's judgment.

*(1)     Legally Sufficient Evidence Supports Wells' Conviction for Aggravated Kidnapping*

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

(Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

"A person commits [aggravated kidnapping] if he intentionally or knowingly abducts another person with the intent to . . . inflict bodily injury on [her] or violate or abuse [her] sexually." TEX. PENAL CODE ANN. § 20.04(a)(4) (West 2011). "'Abduct' means to restrain a person with intent to prevent [her] liberation by: (A) secreting or holding [her] in a place where [s]he is not likely to be found; or (B) using or threatening to use deadly force." TEX. PENAL CODE ANN. § 20.01(2) (West 2011). "This definition does not require that the victim be held for any certain length of time." *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980). Moreover, the evidence need not show that the place where a victim is secreted or held is objectively a place where the victim is unlikely to be found. *Price v. State*, 35 S.W.3d 136, 140 (Tex. App.—Waco 2000, pet. ref'd). "The requirement of secreting the victim where [s]he will likely not be found is a part of the mens rea of the offense, not the actus reus." *Id*. "Thus, if the actor intended at any time during the restraint to secrete or hold the victim in a place where [s]he is not likely to be found, the offense is complete." *Id*. Accordingly, the proper question is "whether the evidence is

3

. . . legally sufficient to prove that [the accused] intended to take [the victim] to a place [she] was unlikely to be found, not that he actually accomplished his purpose." *Id.* at 141 (quoting *King v. State*, 961 S.W.2d 691, 694 (Tex. App.—Austin 1998, pet. ref'd)).

The evidence at trial established that the victim, Siana Negash, came to the United States in 2014 as a refugee from Eritrea, Africa, with the help of the Red Cross. Negash, who spoke very little English,[2] came alone and flew directly to Fort Worth, where she had remained since entering the country. Negash met Wells at the Presbyterian Shelter where she was living. Negash testified that she did not like Wells, but was forced to spend time with him, because he followed her everywhere and she had no other place to go.

According to Negash, because she was new to the country, Wells would occasionally take her by bus to see the city. On one such trip, Wells took Negash to a Hilton Hotel, where he had obtained a room without her knowledge. When Negash refused to enter the room, Wells slapped her across her face, forced her to get into the room, and raped her. Negash testified that she decided to keep the incident secret because she spoke little English and had no friends and because her culture did not allow her to speak about the matter.

After this incident, Negash refused to talk to Wells for several weeks. She testified that Wells kept begging her for forgiveness and claimed he could not live without her. Negash testified that she eventually decided to engage with Wells because he was the only person that would talk to her. Three weeks later, Wells picked Negash up in a rented vehicle and took her to Dallas,

---

[2]Negash's testimony was translated by an interpreter at trial.

where he rented a hotel room in which they could stay. Negash testified that Wells beat her in the hotel room after she refused his demand for oral sex. She continued,

> Right after that[,] I tried to get out of the hotel by opening the door. He pulled me up from my hair and pulled me back. There was some people passing by in the hotel. They saw what had happened. I was crying and screaming and all that. . . . Nobody helped me.

Negash said that Wells decided to leave the hotel room because he had been spotted by passersby in the hotel. Wells drove toward Fort Worth, stopped "inside some kind of woods," raped Negash in the back seat of the vehicle, and drove her back to the shelter.

Negash avoided Wells for several weeks, even though he profusely apologized. Eventually, however, Wells persuaded Negash to go to the laundromat with him by bus. Negash agreed to leave the shelter only because she was certain nothing bad could happen on the city bus. However, as soon as she exited the shelter, Negash noticed that Wells had a rental car in the parking lot and attempted to run from him. Wells grabbed Negash, dragged her into the car, and started driving toward Waco, Texas.

Negash testified that Wells stopped the car, covered the front and back windshields, and took off her clothes. When Negash refused Wells' demand for sex, Wells began beating her on her buttocks with his belt, leaving visible marks and causing her severe pain for several days. During the beating, Negash began having shortness of breath and thought she was having a heart attack. Wells became scared and took Negash to the nearest emergency room in Waco, where he was apprehended.

On appeal, Wells argues that the evidence is legally insufficient because he did not secrete or hold Negash in a place where she was not likely to be found. Specifically, Wells argues that,

5

because Negash was in the passenger seat of the rental car traveling on public highways and was ultimately taken to the hospital, "it was at least as likely as it was not likely that she would have been found."

The Waco Court of Appeals has rejected a similar argument. *See Rios v. State*, 230 S.W.3d 252, 255–56 (Tex. App.—Waco 2007, pet. ref'd). In that case, Rios entered a vehicle belonging to his ex-girlfriend, Ginger Lopez, while she was in the driver's seat of her car. *Id.* at 254. Rios sat in the passenger seat, put a pair of scissors against Lopez' neck, and commanded her to drive to her sister's house. *Id.* Rios refused Lopez' requests to exit the vehicle and, once the vehicle was parked at her sister's house, forced Lopez to undress and engage in sexual activity with him. *Id.* On appeal, Rios argued that the evidence was insufficient to sustain his aggravated kidnapping conviction because he did not secrete or hold Lopez in a place where she was not likely to be found and eventually released her. In rejecting Rios' arguments, the court wrote:

> Rios held Lopez in a place where she was not likely to be found: "an automobile being driven on city streets." *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980); *see* TEX. PENAL CODE ANN. § 20.01(2). "[T]hat the abduction took place in public does not preclude a jury from concluding appellant intended to secret or hold the victim in [a] place where she was not likely to be found." *Megas v. State*, 68 S.W.3d 234, 241 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). . . Rios's eventual decision to relinquish control over Lopez does not negate the abduction element. "[I]f the actor intended at any time during the restraint to secret or hold the victim in a place where he is not likely to be found, the offense is complete." *Price v. State*, 35 S.W.3d 136, 140 (Tex. App.—Waco 2000, pet. ref'd) (citing *Santellan v. State*, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997)). By the time Rios released Lopez, the abduction had already taken place.

*Id.* at 255.

Here, Wells knew that Negash spoke little English, had no friends, and had no resources or means of transportation of her own. She had never left Fort Worth, Texas, before meeting

Wells. Wells had twice previously taken the vulnerable Negash away from the shelter where she lived and had raped her. This time, Wells dragged Negash into his rental car against her will and drove to Waco, a place Negash had never been before. Negash testified that no one at the shelter in Fort Worth would have been able to find her in Waco. She added, "I don't think there would be anyone that was going to follow up on me." When the car stopped, Wells deliberately covered the car windshields and attempted to sexually assault Negash.

As quite similar evidence was presented in *Rios*, we conclude that the evidence in this case is legally sufficient to prove that Wells intended to take Negash to a place she was unlikely to be found. His decision to eventually take her to the emergency room did not negate the abduction element since the abduction had already taken place. *See id.* Accordingly, we overrule this point of error.

*(2)*      *Wells Did Not Preserve the Claimed Fifth-Amendment Error*

Wells also argues that the trial court erred in overruling his objection to testimony given by Lyle Smith, an officer with the Waco Police Department who met Negash and Wells at the hospital after medical personnel discovered she had been recently beaten. Smith testified that, before being placed under arrest, Wells told him he had come with Negash just to see the city. Then, the following transpired:

> Q.      [BY THE STATE] Now, once he was placed under arrest, was the defendant told what the charges were?

> A.      I am not certain when that would have been stated to him.

7

Q. Was he Mirandized at some point?

A. He was Mirandized.

Q. And after that was any further information gathered from the defendant?

A. No. He didn't want to talk about anything.

[BY THE DEFENSE]: Objection, Your Honor. He just commented on his right to remain silent.

[BY THE STATE]: My point is just that he was Mirandized and nothing else was gotten.

THE COURT: Overruled.

Wells argues that the trial court should have sustained his objection to Smith's testimony on the ground that it constituted a comment on his post-arrest silence.[3] The State argues that Wells' objection was untimely. We agree.

A timely objection must be made in order to preserve an error in the admission of evidence. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). The "objection should be made as soon as the ground for objection becomes apparent." *Id*. "[I]f a question clearly calls for an objectionable response, a defendant should make an objection before the witness responds." *Id*. "If he fails to object until after an objectionable question has been asked and answered, and he can

---

[3]"A comment on a defendant's post-arrest silence violates the rights of the accused under the Fifth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution." *Perez v. State*, 187 S.W.3d 110, 112 (Tex. App.—Waco 2006, no pet.) (citing *Doyle v. Ohio*, 426 U.S. 610, 618 (1976); *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995)); *see Waldo v. State*, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988).

show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id.*; *see Grant v. State*, 345 S.W.3d 509, 512, 515 (Tex. App.—Waco 2011, pet. ref'd).[4]

Applying the precedent of the Waco Court of Appeals leads us to conclude that Wells' objection was untimely. The question was asked by the State to learn if Wells offered information after he was given *Miranda* warnings, that is, essentially whether he was silent thereafter. Because there was a high potential for the witness to give an objectionable response, Wells should have lodged his objection before the officer's answer. Failure to do so rendered his objection untimely. Thus, we overrule this point of error as unpreserved.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    February 16, 2018
Date Decided:     February 21, 2018

Do Not Publish

---

[4]*See Boleware v. State*, No. 10-08-00336-CR, 2009 WL 4263682, at *3 (Tex. App.—Waco Nov. 25, 2009, no pet.) (mem. op., not designated for publication); *see also Zmolik v. State,* No. 10-09-00281-CR, 2010 WL 966148, at *3 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op., not designated for publication). Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).