**Brunshae STEADMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 10–07–00105–CR, 10–07–00106–CR.**

Court of Appeals of Texas,
Waco.

July 2, 2008.

Discretionary Review Granted Nov. 19, 2008, No. 01–07–00105–CR.

Discretionary Review Dismissed Nov. 19, 2008, No. 10–07–00106–CR.

Jeffrey D. Parker, The Jeff Parker Law Firm, Belton, for appellant.

David A. Castillo, Coryell County Dist. Atty., Gatesville, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Brunshae Steadman in two cases of aggravated sexual assault, and the trial court sentenced him to twenty years in prison in both. On appeal, Steadman challenges: (1) the legal and factual sufficiency of the evidence (two issues); and (2) the denial of his written objection to an instruction in the jury charge (two issues). We affirm in part and reverse and remand in part.

## FACTUAL BACKGROUND

Steadman was the boyfriend of L.N.'s mother, Edwina. He often babysat L.N. and her two brothers when Edwina was out of the home. L.N. made an outcry of sexual abuse against Steadman to her grandmother, Mary. L.N. was four years old at this time.

Mary discovered a "green and slimy" discharge in L.N.'s underwear and asked L.N. whether Steadman had touched her. L.N. stated that Steadman "laid down on top of me and played with me," touched her "tutu," meaning her vaginal area, and touched her with his penis "[d]own in her stride," also meaning her vaginal area. She did not accuse Steadman of penetrating her with either his finger or his penis. L.N. had previously accused another man of "put[ting] his finger in her middle spot with her clothes on" and touching her without her clothes on, but the police were unable to locate the man. However, neither Edwina nor Mary had previously observed L.N. experience green discharge. Mary did recall a previous incident where L.N. complained of her "tutu" hurting and bleeding.

Edwina took L.N. to the emergency room where she was examined by Annette Wendeborn and Dr. Barry Phillips. She told Wendeborn and Phillips that L.N. had a "greenish discharge," itching, and redness. According to Wendeborn, these symptoms indicate a sexually transmitted disease and it is uncommon to see that type of discharge in a child L.N.'s age. Some sexual contact had to be involved. Dr. Phillips testified that L.N.'s exam revealed a green watery discharge, "mild reddish irritation," and no "evidence of trauma." He does not "routinely" see discharge from a child who has never had a menstrual cycle or sexual intercourse. Other than a sexually transmitted disease, L.N. could have had any number of bacterial infections and the irritation could have been caused by using the restroom, bathing, or scratching. Wendeborn and Phillips took a culture to determine the type of infection involved.

Dr. Arundhati Rao's lab tested L.N.'s specimen, which tested positive for gonorrhea. The test was performed twice. Dr. Darren Hamm, L.N.'s primary care physician, gave L.N. an injection to treat the infection. Although he did not make his own diagnosis of gonorrhea, he testified that the infection in a child indicates "sexual trauma, sexual abuse." Deborah Kleypas, sexual assault nurse examiner, and Dr. Pamela Greene subsequently performed a sexual assault examination of L.N., during which L.N. had to be sedated. During the exam, Kleypas and Greene observed V-shaped notches in L.N.'s hymen and posterior fourchette. According to Kleypas, these findings are not "definitive proof of sexual abuse," but could have resulted from abuse and were consistent with the abuse that L.N. described. The notches were the only signs of penetration. Pointing to specific parts on a body diagram, L.N. told Kleypas that Steadman put his penis on her bottom and on her "tutu."

Deputy Armando Paniagua spoke with Steadman who denied either having gonorrhea or infecting L.N. with gonorrhea. Steadman consented, in writing, to be tested for gonorrhea. Kleypas examined Steadman and obtained specimens for testing. She also obtained a specimen from the husband of a woman who had babysat L.N. Steadman told Edwina that he had taken a test for gonorrhea. Edwina testified that Steadman asked what would happen if he tested positive, seemed "scared," and did not want to go to jail for something he did not do. He apologized to Edwina for whatever he had done. Edwina found this apology unusual, as Stead-

man had never apologized in a similar manner.

Dr. Rao's lab tested Steadman's urine specimen and urethral swab, both of which tested positive for gonorrhea. Like L.N.'s test, Steadman's test was also repeated. The other man's specimen tested negative. Dr. Rao testified that there was no way the samples could have been switched.

Paniagua told Steadman that the test was negative and Steadman agreed to come to the Sheriff's office to discuss it. Before taking Steadman's written statement, Paniagua informed Steadman that he actually tested positive. Steadman appeared upset and surprised, began crying, and denied having an infection. He told Paniagua that he touched L.N. by rubbing her sexual organ with his finger and penetrated her with his finger under her clothing. In his statement, Steadman wrote, "I was playing with my self and got cum on my finger, I was drunk at the time I touch [L.N.] with my hand, I never did do anything other than that." Steadman used gestures to show Paniagua what he did to L.N. After writing his statement, Steadman denied doing anything to L.N. and stopped the interview.

Edwina was unaware that Steadman had gonorrhea and told Paniagua that she did not believe Steadman had gonorrhea. Even after discovering that Steadman was infected, she was surprised and did not believe it because she had never observed any symptoms. Edwina previously had gonorrhea when pregnant with L.N. Greene testified that a baby could contract gonorrhea during child birth, but the infection would develop in the child's eyes.

Kleypas testified that any object that passes the labia majora constitutes "penetrating the female sexual organ" and does not "necessarily have to go in the vagina to be penetration." She further testified that "full penetration" by the male sexual organ is difficult in a child L.N.'s age. There was no evidence of "full penetration" in L.N.'s case. It is common not to find any injuries to the female sexual organ as a result of sexual assault. She explained that gonorrhea is normally transmitted via genital to genital contact, but penetration is not necessary. She could not definitively state that L.N. was sexually abused and, other than the lab results, her examination of Steadman did not reveal that he had gonorrhea.

Dr. Greene testified that gonorrhea can be found on the vagina even if the male sexual organ rubs on the outside of the vagina. Gonorrhea can be transmitted by the male sexual organ touching a child's sexual organ. Greene was not one hundred percent certain that gonorrhea could be transmitted by touching a finger with semen on it to the child's sexual organ; it would have to be a "large inoculum" and be quickly placed on the child's sexual organ. A child is more susceptible to infection; adults may not have symptoms, but a child usually will. It is abnormal for a four-year-old child to have a discharge; thus, if gonorrhea is detected, the child has been sexually abused. A normal exam is common because a child's vaginal opening is too small for full penile penetration.

Dr. Robert Fader testified that adults can have gonorrhea without showing any symptoms. It is unlikely that children will not exhibit symptoms. Gonorrhea could be transmitted where a male has semen on his finger and then touches the female sexual organ or rubs the outside of the vagina. Gonorrhea is not always the result of sexual assault. Steadman's and L.N.'s specimens were sent to the Center for Disease Control for testing that could potentially link the two cases of gonorrhea. However, the CDC never received L.N.'s specimen. Had the test been performed it would have been definitive. Even had

L.N.'s sample been received, the CDC had indicated that it might not be able to extract enough DNA to properly perform the test.

Edwina testified that L.N. struggles to discuss the offense, often changing the subject, providing excuses, or expressing fear. According to Mary, L.N. is now moody and sometimes reacts in anger. L.N.'s counselor testified that L.N. exhibits signs of "agitation" and "avoidance" when discussing the offense.

## LEGAL AND FACTUAL SUFFICIENCY

In cause number 10–07–00105–CR, Steadman's first and second issues challenge the sufficiency of the evidence to support aggravated assault by his sexual organ. In cause number 10–07–00106–CR, Steadman's first and second issues challenge the sufficiency of the evidence to support aggravated assault by his finger.

## Standards of Review

■ Under legal sufficiency review, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim. App.2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *see also Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry*, 30 S.W.3d at 406; *Matson*, 819 S.W.2d at 843.

■ Under factual sufficiency review, we ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim.App.2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson*, 23 S.W.3d at 7. We do not indulge in inferences or confine our view to evidence favoring one side. Rather, we look at all the evidence on both sides and then make a predominantly intuitive judgment. *Id.*

## Digital Penetration

■ Steadman contends that the evidence is legally and factually insufficient because L.N. did not testify at trial; thus, his extrajudicial confession that he digitally penetrated L.N.'s sexual organ is not supported by corroborating evidence.

L.N. told Mary that Steadman "laid down on top of me and played with me" and touched her "tutu." When defense counsel asked Kleypas what signs of penetration she observed during her examination of L.N., Kleypas identified the V-shaped notches in L.N.'s hymen and posterior forchette. L.N. also suffered from green discharge and irritation. She was diagnosed with gonorrhea, the same infection for which Steadman tested positive. Witnesses testified that the presence of a sexually transmitted disease in a small child is indicative of sexual abuse. It is possible for the infection to be transmitted via digital penetration.

■ Under the *corpus delicti* rule, there must be "some evidence [ ] outside of the extra-judicial confession which, consid-

ered alone or in connection with the confession, shows that the crime actually occurred." *Salazar v. State,* 86 S.W.3d 640, 645 (Tex.Crim.App.2002). The fact that L.N. did not expressly state that Steadman penetrated her with his finger is not dispositive. *See Villalon v. State,* 791 S.W.2d 130, 133 (Tex.Crim.App.1990) (a complainant is not required to testify to actual penetration). Neither does the fact that L.N. accused Steadman of *touching* her vaginal area negate a finding of penetration, as a child victim's description of the offense need not be precise, and she is not expected to express herself at the same level of sophistication as an adult. *See id.* at 134. The State "produc[ed] some independent evidence that someone had sexual contact with [L.N.'s] private part and that the act was performed with criminal intent." *Salazar,* 86 S.W.3d at 645.

The jury could reasonably conclude, beyond a reasonable doubt, that Steadman committed the offense of aggravated sexual assault by penetrating L.N.'s sexual organ with his finger. *See Curry,* 30 S.W.3d at 406. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong and manifestly unjust. *See Watson,* 204 S.W.3d at 414–15; *see also Johnson,* 23 S.W.3d at 11.

### Penetration by Sexual Organ

Steadman contends that the evidence is legally insufficient because a variance exists between the indictment and the evidence presented at trial; specifically, there is no evidence that he penetrated L.N.'s sexual organ with his sexual organ. He further contends that the evidence is factually insufficient to support a finding of penetration by his sexual organ.

■ It is not necessary that the evidence establish full penetration of L.N.'s sexual organ by Steadman's sexual organ. The State may prove penetration by circumstantial evidence. *See Villalon,* 791 S.W.2d at 133. Evidence of the slightest penetration is sufficient to uphold a conviction, so long as it has been shown beyond a reasonable doubt. *See Luna v. State,* 515 S.W.2d 271, 273 (Tex.Crim.App. 1974). Penetration may be established by contact with the female sexual organ that reasonable people could regard "as more intrusive than contact with [the] outer vaginal lips." *Vernon v. State,* 841 S.W.2d 407, 409 (Tex.Crim.App.1992).

L.N. told Mary that Steadman touched her with his penis "[d]own in her stride" and "laid down on top of me and played with me," and told Kleypas that Steadman put his penis on her "tutu." L.N. suffered from a green discharge, irritation, and injuries to her hymen and posterior forchette. Steadman and L.N. both tested positive for gonorrhea, which can be transmitted by penile penetration. Because L.N.'s account need not be precise, the jury could find penetration by sexual organ even though L.N. accused Steadman of placing his penis *on* her vaginal area. *See Villalon,* 791 S.W.2d at 134. The evidence could lead a reasonable jury to conclude that the contact between Steadman's sexual organ and L.N.'s sexual organ was "more intrusive than contact with her outer vaginal lips." *Vernon,* 841 S.W.2d at 409. The evidence is legally sufficient to establish penetration by sexual organ.

■ However, the evidence is not factually sufficient. The record indicates that gonorrhea can also be transmitted by the male sexual organ merely touching the outside of the female sexual organ, without the male sexual organ passing beyond the labia majora. A neutral review of the evidence establishes a *touching* between Steadman's sexual organ and L.N.'s sexual organ, but does not establish an intrusion

beyond the vaginal lips. Accordingly, we find the proof of guilt to be so weak as to render the jury's verdict clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414–15; *see also Johnson*, 23 S.W.3d at 11. We reverse Steadman's conviction in cause number 10–07–00105–CR for aggravated sexual assault with his sexual organ and remand for a new trial on this count. Issues one and two are overruled in part and sustained in part.

## OBJECTIONS TO THE CHARGE

Steadman's third and fourth issues are identical in both appeals. Issue three challenges the trial court's overruling of his written objection to an instruction in the jury charge. In issue four, Steadman contends that his constitutional rights were violated by inclusion of the instruction in the charge.

■ In his written objections to the jury charge, Steadman objected to the following instruction on grounds that it failed to give him "the benefit of reasonable doubt by attempting to define 'reasonable doubt' by stating what reasonable doubt is not":

It is not required that the prosecution prove guilt beyond all possible doubt, it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

This is paragraph three of the *Geesa* instructions, which are no longer required. *See Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991); *see also Paulson v. State*, 28 S.W.3d 570, 573 (Tex.Crim.App. 2000) (overruling *Geesa* to the extent it "requires trial courts to instruct juries on the definition of 'beyond a reasonable doubt' "). The Court of Criminal Appeals

has determined that inclusion of this paragraph in a jury charge is not an abuse of discretion, although the better practice is to exclude it.[1] *See Woods v. State*, 152 S.W.3d 105, 115 (Tex.Crim.App.2004); *see also Battaglia v. State*, No. 05–06–00798–CR, 2007 WL 4098905, at *3, 2007 Tex. App. Lexis 9083, at *6–7 (Tex.App.-Dallas Nov.19, 2007, no pet.) (not designated for publication) (rejecting appellant's argument that instruction was improperly included because it "amounts to a definition of reasonable doubt because it states what reasonable doubt is not' "); *Frank v. State*, 183 S.W.3d 63, 79 (Tex.App.-Fort Worth 2005, pet. ref'd) (inclusion of paragraph three not improper). Inclusion of the complained of paragraph was not improper. *See Woods*, 152 S.W.3d at 115; *see also Battaglia*, 2007 WL 4098905, at *3, 2007 Tex.App. Lexis 9083, at *6–7; *Frank*, 183 S.W.3d at 79. We overrule issue three.

■ Steadman next argues that the inclusion of this paragraph violates the Fifth and Fourteenth Amendments of the United States Constitution and Article I, sections 13 and 19 of the Texas Constitution.

Although *Woods* does not address the constitutional issues raised here, the Court of Criminal Appeals found the inclusion of *Geesa* paragraph three not improper. *See Woods*, 152 S.W.3d at 115. Texas courts have similarly held in a constitutional context. *See Chiodo v. State*, No. 2–06–096–CR, 2007 WL 1952375, at *4, 2007 Tex. App. Lexis 5261, at *4–8 (Tex.App.-Fort Worth July 5, 2007, pet. ref'd) (not designated for publication) (due process); *see also Jones v. State*, No. 14–03–00650–CR, 2005 WL 549541, at *7, 2005 Tex.App. Lexis 1850, at *23–25 (Tex.App.-Houston

---

1. Before the Court of Criminal Appeals delivered its opinion in *Woods*, we determined that the inclusion of paragraph three in the jury charge, absent the agreement of both parties, was improper. *See Phillips v. State*, 72 S.W.3d 719, 720 (Tex.App.-Waco 2002, no pet.). Our decision in *Phillips* has been implicitly overruled by *Woods*.

[14th Dist.] March 10, 2005, pet. ref'd) (not designated for publication) (due process). Moreover, *Paulson* specifically criticized paragraphs *four* and *five* of the *Geesa* instructions, not paragraph three. *See Paulson*, 28 S.W.3d at 572; *see also Woods*, 152 S.W.3d at 115. In light of *Woods*, we decline to find the inclusion of *Geesa* paragraph three to be unconstitutional. We overrule issue four.

## CONCLUSION

We reverse Steadman's conviction in cause number 10–07–00105–CR for aggravated sexual assault by sexual organ and remand that cause to the trial court for further proceedings consistent with this opinion. We affirm the judgment in cause number 10–07–00106–CR.

(Chief Justice GRAY concurring and dissenting with a note).*

---

* (Note by Chief Justice Gray: "Chief Justice Gray concurs in the affirmance of the judgment of conviction in cause number 10–07–00106–CR and dissents to the reversal of the conviction in 10–07–00105–CR, noting that he would also affirm the conviction in 10–07–00105–CR. I do not find the jury's verdict clearly wrong and manifestly unjust. A separate opinion will not issue.")