

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00105-CR

**BRUNSHAE STEADMAN,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the 52nd District Court**
**Coryell County, Texas**
**Trial Court No. 18,512**

## OPINION ON REMAND

On original submission, the Court, with Chief Justice Gray dissenting, reversed

Brunshea Steadman's conviction for aggravated assault due to factual insufficiency. *See*

*Steadman v. State*, 262 S.W.3d 401 (Tex. App.—Waco 2008, pet. granted). The Court of

Criminal Appeals reversed and remanded, holding that we "failed in several respects to

conduct a proper factual sufficiency review." *See Steadman v. State*, 280 S.W.3d 242,

250 (Tex. Crim. App. 2009). The sole issue on remand is whether the evidence is

factually sufficient to support Steadman's conviction for aggravated assault by his sexual organ. We affirm.

## STANDARD OF REVIEW

Under factual sufficiency review, we ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson*, 23 S.W.3d at 7. We do not indulge in inferences or confine our view to evidence favoring one side. Rather, we look at all the evidence on both sides and then make a predominantly intuitive judgment. *Id.*

## ANALYSIS

The State may prove penetration by circumstantial evidence. *See Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990). The State need not establish actual penetration of the vaginal opening in order to establish aggravated sexual assault by a defendant's sexual organ:

> [M]ere contact with the outside of an object does not amount to a penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact.

*Vernon v. State,* 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Evidence of the slightest penetration is sufficient to uphold a conviction, so long as it has been shown beyond a reasonable doubt. *See Luna v. State*, 515 S.W.2d 271, 273 (Tex. Crim. App. 1974).

L.N. told her grandmother that Steadman "laid down on top of me and played with me," touched her "tutu," meaning her vaginal area, and touched her with his penis "[d]own in her stride," also meaning her vaginal area. L.N. was suffering from a green discharge and had previously complained of her "tutu" hurting and bleeding.

Nurse Annette Wendeborn testified that greenish discharge in a child L.N.'s age is uncommon and suggests a sexually transmitted disease. She opined that the infection was caused by some kind of sexual contact. Dr. Barry Phillips testified that L.N.'s exam revealed a green watery discharge, "mild reddish irritation," and no "evidence of trauma." He does not "routinely" see discharge from a child who has never had a menstrual cycle or sexual intercourse. L.N. could have had any number of bacterial infections and the irritation could have been caused by using the restroom, bathing, scratching, or wearing old underwear. L.N. tested positive for gonorrhea.

Steadman tested positive for both gonorrhea and chlamydia. He told Deputy Armando Paniagua that he touched L.N. by rubbing her sexual organ with his finger and penetrated her with his finger under her clothing. In his statement, Steadman wrote, "I was playing with my self and got cum on my finger, I was drunk at the time I touch [L.N.] with my hand, I never did do anything other than that." He used gestures to show Paniagua what he did to L.N. After writing his statement, Steadman denied doing anything to L.N. and stopped the interview.

L.N. told sexual assault nurse examiner Deborah Kleypas that Steadman put his penis on her bottom, "tutu," and "pee pee." During L.N.'s exam, Kleypas and Dr. Pamela Greene observed v-shaped notches in L.N.'s hymen and posterior fourchette. Kleypas testified that these findings are not "definitive proof of sexual abuse," but could have resulted from abuse and were consistent with the abuse that L.N. described.

Kleypass testified that anything passing beyond the labia majora constitutes penetration of the female sexual organ, such as "rubbing up and down;" "it doesn't necessarily have to go in the vagina to be penetration." Kleypas and Greene explained that penetration of a child's sexual organ by the male sexual organ is difficult. Greene explained that a child's vaginal opening is so tiny that the male penis could not enter without "ripping it from the vagina all the way to the rectum." Kleypas testified that in probably ninety percent of sexually abused children, "something has passed the labia majora." The percentage is much less with regard to the frequency of vaginal penetration. Eighty-five to ninety percent of the time there is no injury to the labia majora or labia minora. Greene testified that seventy-five percent of exams are normal.

Greene and Kleypas testified that gonorrhea is transmitted by genital to genital contact or mucus membrane to mucus membrane. Kleypas explained that any discharge from the penis that contacts the mucus membranes past the labia majora is sufficient to transmit the infection. Greene testified that the infection can be transmitted by rubbing on the labia minora or contacting the child's genitals. Dr. Robert Fader testified that gonorrhea can be transmitted to a child by rubbing between the labia majora. He explained that, unlike an adult female, a child's entire genital urinary tract

is susceptible to infection because of differences in the inner tissue of the female sexual organ. He, Greene, and Kleypas explained that, unlike adults, children usually show symptoms of the infection. Greene further explained that a person may have both chlamydia and gonorrhea, but transmit only one infection.

Greene testified that it may be possible to transmit gonorrhea by rubbing the child's genitals with a finger on which semen is present, but would probably have to be a "large inoculum." She stated that gonorrhea has not been found to be transmittable by object, such as a towel, but one study found that it was transmitted to a child who swallowed an agar medium on which the infection was growing. Fader testified that the infection cannot live outside the body very long; thus, transmission by finger is possible, but the sample would need to be in a moist state when transferred. He testified that catching the infection by sitting on a toilet is a remote possibility.

L.N.'s mother admitted having gonorrhea while pregnant with L.N. Greene testified that a baby could contract gonorrhea during child birth, but the infection would develop in the child's eyes and would develop within a few weeks of delivery. Fader testified that it is highly unlikely that gonorrhea could be contracted at birth and develop four years later. Kleypas, Greene, and L.N.'s primary care physician Dr. Darren Hamm each testified that gonorrhea in a child is indicative of sexual abuse. Specifically, Greene testified that gonorrhea in a four-year-old child means sexual abuse.

As the Court of Criminal Appeals noted in *Steadman*, *Vernon* accepted the State's position that "tactile contact beneath the fold of complainant's external genitalia

amounts to penetration within the meaning of the Aggravated Sexual Assault statute, since vaginal penetration is not required, but only penetration of the 'female sexual organ.'"  *Vernon*, 841 S.W.2d at 409; *Steadman*, 280 S.W.3d at 247-48.  In this case, L.N. accused Steadman of touching her female sexual organ, L.N. suffered from a sexually transmitted disease from which Steadman also suffered, and medical testimony established that penetration constitutes anything passing beyond the labia majora and that gonorrhea may be transmitted by this means without penetrating the vaginal opening.  Viewing the evidence in a neutral light, a reasonable jury could conclude that the contact between Steadman's sexual organ and L.N.'s sexual organ was "more intrusive than contact with her outer vaginal lips."  *Vernon*, 841 S.W.2d at 409.  The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong or manifestly unjust.  *See Watson*, 204 S.W.3d at 414-15; *see also Johnson*, 23 S.W.3d at 11.  Because the evidence is factually sufficient to support Steadman's conviction, we overrule his sole issue on remand and affirm the judgment.


FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed December 16, 2009
Do not publish
[CRPM]