ACCEPTED
03-14-00228-CR
6231651
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/27/2015 11:45:21 AM
JEFFREY D. KYLE
CLERK

**No. 03-14-00228-CR**
**No. 03-14-00229-CR**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

7/27/2015 11:45:21 AM

JEFFREY D. KYLE
Clerk

In the
Court of Appeals
Third District
Austin, Texas

---

**Troy Williams,**
Appellant

v.

**The State of Texas,**
Appellee

---

Appeal from the 147th Judicial District Court
Travis County, Texas
Cause Numbers D-1-DC-12-904077 and D-1-DC-12-904080

---

**STATE'S BRIEF**

---

**Rosemary Lehmberg**
District Attorney
Travis County

**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

*Oral argument is not requested*

# Table of Contents

Index of Authorities.............................................................................. ii

Summary of the State's Argument........................................................1

Argument............................................................................................ 3

    Reply Point One: The trial court did not err in refusing to give a jury instruction on voluntary release in a safe place.............................. 3

    Reply Point Two: The prosecutor's explanation of parole law was proper. .......................................................................................7

    Reply Point Three: The evidence is legally sufficient to prove penetration. ....................................................................................13

Prayer ...............................................................................................18

Certificate of Compliance and Service ...............................................19

i

# Index of Authorities

**Cases**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) ................ 6

*Ballard v. State*, 193 S.W.3d 916 (Tex. Crim. App. 2006) .................. 4

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ................. 13

*Brown v. State*, 98 S.W.3d 180 (Tex. Crim. App. 2003) .................... 4

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999) ............. 2, 13

*Gamboa v. State*, 296 S.W.3d 574 (Tex. Crim. App. 2009) .............. 11

*Hawkins v. State*, 135 S.W.3d 72 (Tex. Crim. App. 2004) ................ 11

*Jackson v. Virginia*, 443 U.S. 307 (1979) ........................................ 13

*Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App. 1993) .................... 4

*Nzewi v. State*, 359 S.W.3d 829 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) ........................................................................ 8

*Rynes v. State*, 479 S.W.2d 70 (Tex. Crim. App. 1972) ..................... 14

*Steadman v. State*, 262 S.W.3d 401 (Tex. App.—Waco 2008, pet. granted) ...................................................................................... 15

*Steadman v. State*, 280 S.W.3d 242 (Tex. Crim. App. 2009) ............ 15

*Steadman v. State*, No 10-07-00105-CR, 2009 Tex. App. LEXIS 9594, 2009 WL 4852156 (Tex. App.—Waco 2009, no pet.) ...................... 15

*Taylor v. State*, 233 S.W.3d 356 (Tex. Crim. App. 2007) ................... 9

*Vernon v. State*, 841 S.W.2d 407 (Tex. Crim. App. 1992) .................. 15

*Waters v. State*, 330 S.W.3d 368 (Tex. App.—Fort Worth 2010, pet. ref'd) .......................................................................................... 10

*West v. State*, 406 S.W.3d 748 (Tex. App. Houston [14th Dist] 2013, pet. ref'd) ................................................................................... 4, 5

**Statutes**

Tex. Code Crim. Proc. art. 37.07 ...................................................... 11

Tex. Code Crim. Proc. art. 44.29 ...................................................... 12

Tex. Pen. Code § 20.04 ...................................................................... 3

**Rules**

Tex. R. App. P. 44.2 .......................................................................... 10

**No. 03-14-00228-CR**
**No. 03-14-00229-CR**

In the
Court of Appeals
Third District
Austin, Texas

---

**Troy Williams,**
Appellant

v.

**The State of Texas,**
Appellee

---

Appeal from the 147th Judicial District Court
Travis County, Texas
Cause Numbers D-1-DC-12-904077 and D-1-DC-12-904080

---

**STATE'S BRIEF**

---

To the Honorable Third Court of Appeals:

Now comes the State of Texas and files this brief in response to Appellant's briefs.

**Summary of the State's Argument**

*Reply Point One:* The trial court did not err in refusing to give a jury instruction on voluntary release in a safe place. Appellant was not entitled to this instruction because he never performed an overt

and affirmative act that informed the victim that she was fully released from captivity. While Appellant may have let the victim flee while he was trying to steal her car, that does not count as an affirmative act which brought home to the victim that she had been fully released from captivity. Thus, the trial court did not err in failing to give the requested jury instruction.

*Reply Point Two:* The prosecutor's comments on parole law were proper. She merely explained how parole eligibility worked with fifty, sixty, and life sentences, to help the jury understand the parole instructions. The explanation did not go beyond an attempt to clarify the jury instructions. The trial court did not abuse its discretion in overruling Appellant's objections to the prosecutor's comments.

*Reply Point Three:* The evidence is legally sufficient to prove penetration. Penetration of the female sexual organ includes any intrusion beyond the outer labia, or lips. The State does not have to show that the penis actually entered the vaginal canal. The victim testified that Appellant's erect penis was banging, thrusting, and pounding against her vagina. Additionally, her urethra was red and irritated, her cervix was red and had a little bit of blood on it, and

Appellant's sperm was found on the victim's labial swabs. All of this evidence could lead a reasonable jury to conclude that the contact between Appellant's sexual organ and the victim's sexual organ was more intrusive than mere contact with her outer vaginal lips, and therefore, the evidence is legally sufficient to support the jury's finding of penetration.

## Argument

***Reply Point One:* The trial court did not err in refusing to give a jury instruction on voluntary release in a safe place.**

Appellant argues that he was entitled to a jury instruction on voluntary release in a safe place. This instruction tells the jury that if the defendant proves by a preponderance of the evidence that he voluntarily released the victim in a safe place, the punishment range for aggravated kidnapping is lowered to a second degree felony. Tex. Pen. Code § 20.04(d).

Appellant argues that he was entitled to this instruction because he set the victim's car keys on the ground and turned around to leave, and he later got into the victim's car and tried to drive away. He argues that the victim was released at this point because she was free

3

to walk across the street and contact the AISD employee who was in the school parking lot.

**Case law**

A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong or weak. But when the evidence fails to raise a defensive issue, the trial court commits no error by refusing the requested instruction. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993).

In order to raise the issue of voluntary release in a safe place, a defendant must offer some evidence that he actually released the victim. *West v. State*, 406 S.W.3d 748, 766 (Tex. App. Houston [14th Dist.] 2013, pet. ref'd). The defendant must have performed some overt and affirmative act that informs the victim that he has been fully released from captivity. *Ballard v. State*, 193 S.W.3d 916, 919 (Tex. Crim. App. 2006). Voluntary release does not include rescue or escape. *Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003).

**Application to the facts**

Appellant never performed an overt and affirmative act that informed the victim that she was fully released from captivity.

To begin, Appellant never let the victim have her car keys. He briefly set them on the ground, but he immediately picked them back up when the victim tried to get help at the rec center. Additionally, as the victim tried to walk away, Appellant yelled at her to come help him start her car. When the victim grabbed her car keys and ran, Appellant pursued her, pushed her, and took the car keys back. The victim ended up running across the street, stopping in front of a stranger's car, and asking for help. 3RR 95-97.

As the trial court stated, "at no point was [the victim] quote, unquote, released." 6RR 45. While Appellant may have let the victim escape while he was trying to steal her car, that is not an affirmative act which brought home to the victim that she had been fully released from captivity. *See West*, 406 S.W.3d at 766 (defendant was not entitled to an instruction on safe release just because he did not prevent the victim from approaching other people or the police).

Thus, the trial court did not err in failing to give the requested jury instruction.

**Harmless error**

For there to be reversible error, the record must show that Appellant suffered some actual (rather than theoretical) harm. *Almanza v. State*, 686 S.W.2d 157, 171, 174 (Tex. Crim. App. 1985).

In Appellant's case, there was no harm because the evidence clearly showed that the victim was not released, much less released in a safe place. The victim was stranded in the parking lot of a closed and locked recreation center; she had just been sexually assaulted; Appellant repeatedly threatened to kill her; Appellant said he had a gun; Appellant yelled at her when she tried to get help; Appellant took her car keys and attempted to steal her car; Appellant assaulted her again when she tried to grab her car keys and run; and she had to run out, across a street, and stand in front of a stranger's car to get help. 3 RR 87-97. At no point did Appellant communicate a desire or intent to release her, much less do any affirmative act to show her that she was fully released.

In sum, no reasonable juror would have found that Appellant proved by a preponderance of the evidence that he voluntarily released the victim in a safe place, and thus, he was not harmed by the lack of such a jury instruction. For these reasons, Appellant's first point of error should be overruled.

**_Reply Point Two:_ The prosecutor's explanation of parole law was proper.**

During closing argument, the prosecutor stated:

> So then if you go to Page 6 of the charge, it will tell you it cannot accurately be predicted how the parole law and good conduct time that might be applied to this defendant if he is sentenced to a term of imprisonment because the application of these laws will depend on decisions made by prison or parole authorities.
>
> What this charge is telling you is, when you go back there you can't say, I wonder when he'll be paroled. What you do know and what the law provides is that he has to serve at least half of the term before he is eligible for parole. And, ladies and gentlemen, you cannot consider the eligibility, if he is actually going to get paroled. Okay? That is not something that you need to be talking about.
>
> What we do know and as an example, let's say you gave a 50-year sentence, he would be eligible for parole –

Appellant objected, arguing that the prosecutor was improperly directing the jury to consider parole and to do the parole calculations. The judge overruled the objection, and the prosecutor told the jury:

> So what the law provides and what the charge says is that the defendant will not become eligible until he serves at least half of whatever sentence is assessed. So, for example, if it was a 50-year sentence, he would not be eligible until 25 years. If it's a 60-year sentence, he is not eligible until 30 years. If it's 60 to life, there's still that same 30 years. Okay? So he – if you assess a life sentence, then he is still eligible at 30 years.

6RR 51-53.

On appeal, Appellant argues that it was improper to specifically apply the parole law and calculations to Appellant.

## Standard of review

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14ᵗʰ Dist.] 2012, pet. ref'd).

## Case law

*Taylor* presents a nearly identical scenario. There, the prosecutor told the jury, "A 40-year sentence means the defendant becomes eligible for parole after serving 20 years. A 60-year sentence means he becomes eligible after serving 30 years. A sentence of life or 75 still means he becomes eligible after 30 years." The appellant argued that it was improper for the prosecutor to explain how parole eligibility

rules applied to certain sentences, and also that the prosecutor stepped over the line by referring to "the defendant" and "he" in his explanation. *Taylor v. State*, 233 S.W.3d 356, 358 (Tex. Crim. App. 2007).

The court of criminal appeals held that the argument was proper, stating:

> In the case before us, the prosecutor did not convey any information beyond what was properly contained in the charge when he explained how the parole eligibility rules set out in the charge worked with forty, sixty and seventy-five year sentences. The explanation simply ensured that the jury understood the language set out in the instructions. Nor do we ascribe any significance to the prosecutor's passing use of the words "defendant" and "he" in the course of giving his explanation. The statutory instruction itself uses the words "defendant" and "he" when describing the rules of parole eligibility. Nothing in this case indicates that the prosecutor's explanations went beyond an attempt to clarify the meaning of the jury instructions.

*Taylor*, at 359.

Appellant cites to several cases that held that the prosecutor's argument was improper, but these cases all pre-date *Taylor*, above. As explained by the Fort Worth Court of Appeals, the reasoning these cases relied upon, and upon which Appellant now seizes, appears not to have survived the court of criminal appeals' decision in *Taylor*. *See*

*Waters v. State*, 330 S.W.3d 368, 372 (Tex. App.—Fort Worth 2010, pet. ref'd).

**Application to the facts**

Just like *Taylor*, the prosecutor in Appellant's case merely explained how parole eligibility worked with fifty, sixty, and life sentences. The explanation simply ensured that the jury understood the parole instructions. The explanation did not go beyond an attempt to clarify the jury instructions, and the trial court did not abuse its discretion in overruling Appellant's objections to the prosecutor's argument.

**Harmless error**

If the court determines that the trial court erred in overruling Appellant's objections to the prosecutor's comments on the parole law, the next step is a harm analysis.

Nonconstitutional error must be disregarded if it does not affect substantial rights. Tex. R. App. P. 44.2(b). To determine whether improper comments on parole law affect substantial rights, courts balance three factors: (1) the severity of the misconduct (prejudicial

effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Under the first factor, severity of the misconduct, the prosecutor's comments concerning parole were brief. Moreover, she explicitly told the jury that they cannot consider when Appellant will actually get parole and that they do not need to talk about that. 6RR 51.

Under the second factor, curative measures, the jury charge accurately instructed the jury on parole law, per Tex. Code Crim. Proc. art. 37.07 §4(b), and the trial court also told the jury that "the law is the charge that is given to you and you will be guided by the charge." CR 140-41; 6RR 53. Appellate courts generally presume that a jury follows the trial court's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

Under the third factor, certainty of the punishment assessed, the jury likely would have given Appellant the same punishment even if the prosecutor had not made the parole comments. Appellant attacked a 64-year-old woman as she was taking a morning walk on a hiking trail. He dragged her to the ground and raped her in broad

daylight. He told her that he was going to kill her, and she believed him. Additionally, Appellant had previously been adjudicated for sexually assaulting a six-year-old girl. 5RR 31-37; SX 72 at 7RR 138; SX 83 at 7RR 162. Several people testified that Appellant received extensive sex offender treatment for the prior offense, but clearly he did not rehabilitate himself. 5RR 38-95. One therapist described Appellant as very manipulative. 5RR 92. Finally, the jury still could have considered parole law in its deliberations, based on the trial court's instructions, even if the prosecutor had not made any comments about parole.

Balancing these three factors, the prosecutor's comments were harmless, and Appellant's second point of error should be overruled.

## Note about Appellant's requested relief

Appellant has requested a new trial, but if this court sustains either point of error above, Appellant is entitled to a new trial on punishment only. *See* Tex. Code Crim. Proc. art. 44.29(b).

***Reply Point Three:*** **The evidence is legally sufficient to prove penetration.**

Appellant argues that there was no evidence to show that Appellant's sexual organ penetrated the victim's sexual organ and that the victim said that Appellant did not penetrate her.

## Standard of review

In reviewing the legal sufficiency of the evidence, the appellate court looks at the evidence in the light most favorable to the verdict and decides whether a rational jury could have found guilt beyond a reasonable doubt, based on the evidence and reasonable inferences therefrom. *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The court presumes that the jury resolved any conflicts in the evidence in favor of the verdict because the jury is the sole judge of the weight and credibility of the evidence. *Brooks*, 323 S.W.3d at 899; *Jackson*, 443 U.S. at 326. The court does not re-evaluate the evidence or substitute its judgment for that of the jury. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

**Case law**

Penetration of the female sexual organ includes any intrusion beyond the outer labia, or lips. The State does not have to show that the penis actually entered the vaginal canal. *Rynes v. State*, 479 S.W.2d 70, 72 (Tex. Crim. App. 1972).

Additionally, the victim does not have to testify that there was penetration. Penetration can be proven by circumstantial evidence. In *Steadman*, for example, the appellant argued that the evidence was legally insufficient to show penetration of the victim's sexual organ by the appellant's sexual organ because the child victim only said that the appellant "touched" her tutu (her word for vagina) and put his penis "on" her tutu. She never said that the appellant penetrated her or put his penis in her vagina. And although the victim had notches in her hymen and posterior fourchette, the SANE nurse testified that the notches were not definitive proof of abuse. Finally, the victim and the appellant both had gonorrhea, but the appellant admitted touching the victim's vagina with a finger on which his semen was present, and a doctor testified that it was possible to transmit gonorrhea in this

manner. *Steadman v. State*, 262 S.W.3d 401, 404-06 (Tex. App.—Waco 2008, pet. granted).

Nevertheless, the court of appeals found that the evidence was legally sufficient because the evidence could lead a reasonable jury to conclude that the contact between the appellant's sexual organ and the victim's sexual organ was "more intrusive than contact with her outer vaginal lips." *Id.* at 407, *quoting Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992).[1]

## Application to the facts

In this case, the victim testified:

- His penis was thrusting very hard against my vagina. 3RR 91.
- No, it wasn't just feeling some pressure. His erect penis was banging against my vagina. 3RR 135.
- He was pounding against my vagina. 3RR 137.

She also testified that she felt his erect penis and that he was thrusting his hips. 3RR 137. Viewing this evidence in the light most favorable to the verdict, a reasonable jury could have easily inferred

---

[1] The court of appeals went on to find the evidence factually insufficient, but the court of criminal appeals reversed, and the evidence was found factually sufficient on remand. *See Steadman v. State*, 280 S.W.3d 242 (Tex. Crim. App. 2009); *Steadman v. State*, No 10-07-00105-CR, 2009 Tex. App. LEXIS 9594, 2009 WL 4852156 (Tex. App.—Waco 2009, no pet.).

that the contact between Appellant's sexual organ and the victim's sexual organ was more intrusive than contact with just her outer vaginal lips.

The physical evidence also supported the jury's finding of penetration. Diagrams admitted into evidence showed that both the urethra and the cervix are inside or below the labia. See SX 70 at 7RR 135. The sexual assault nurse examiner testified that the victim's urethra was red and irritated, and the victim testified that she felt burning from her vagina when she used the bathroom the next day. 3RR 105, 163; 4RR 56. Additionally, the nurse noted a few red areas and a little bit of blood on the cervix. 4RR 57. She testified that the redness on the cervix could possibly be normal redness, but it is not normal to see blood there in a postmenopausal woman (such as the victim). 4RR 60. She testified that the blood could have come from tearing in the vagina, which would require penetration, although the tearing could have happened during consensual sex.[2] 4RR 91-93. The nurse also testified that she swabbed the victim's labia, the creases,

---

[2] The victim apparently had sex with her husband some time before being assaulted in this case, as her husband's sperm was found on the vaginal swabs. 4RR 131.

and the clitoral hood. 4RR 65. A DNA analyst then testified that Appellant is the source of DNA from sperm found on a labial swab. 4RR 113-14. Again, all of this evidence could lead a reasonable jury to conclude that the contact between Appellant's sexual organ and the victim's sexual organ was more intrusive than mere contact with her outer vaginal lips.

Appellant argues that his DNA could have transferred to the victim's labia from her underwear or some other source, but this does not view the evidence in the light most favorable to the verdict. Transference is technically possible, but a rational jury could have rejected this alternative hypothesis. Additionally, while it is true that the victim told the police that Appellant had not penetrated her, she explained to the jury that she only meant that she did not think that his penis had entered the vaginal canal. 3RR 138-39, 149-54, 161-62. Again, the State is not required to prove this degree of penetration. Rather, any intrusion beyond the labia is sufficient.

In sum, the evidence is legally sufficient to support the jury's finding of penetration, and this point of error should be overruled.

## Prayer

The State asks this Court to overrule Appellant's points of error and affirm the trial court's judgment.

Respectfully submitted,

**Rosemary Lehmberg**
District Attorney
Travis County


**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov


Timothy Elliott, Law Clerk

18

## Certificate of Compliance and Service

I hereby certify that this brief contains 3,312 words. I further certify that, on the 27th day of July, 2015, a true and correct copy of this brief was served, by U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the defendant's attorney, Linda Icenhauer-Ramirez, Attorney at Law, 1103 Nueces, Austin, Texas 78701.

**Angie Creasy**