COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MITCHELL EDWARD TEMPLETON, JR., | § | No. 08-16-00018-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 34th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC#20120D05281) |
| | § | |

# **O P I N I O N**

Mitchell Edward Templeton, Jr., appeals his conviction on one count of aggravated kidnapping. In three issues on appeal, Templeton asserts a due process violation related to his competency to stand trial, an insanity defense, and a legal sufficiency challenge. We affirm the judgment of the trial court.

## **BACKGROUND**

### *Factual History*

Because Templeton challenges only his aggravated kidnapping conviction on appeal,[1] we focus our discussion of the factual record accordingly. The bulk of the evidence in this case came

---

[1] Templeton was also convicted on two counts of aggravated sexual assault at the same trial. Templeton does not challenge his conviction on those counts on appeal.

in through the testimony of three witnesses: a security guard, the victim, and the defendant.

Security Guard David Flores Ochoa testified that on October 18, 2012, he was a private security guard employed to patrol an area around a copper field by Hawkins and North Loop. He was patrolling by Tony Lama Street, when he saw a white car parked behind a business. Ochoa testified that cars were not allowed in that area at night. He pulled up behind the vehicle and he turned his lights on. A black male exited the driver's side of the car; he was pulling his pants up and was not wearing a shirt. The man approached Ochoa and told him that he had given a young lady $20 for sex and that she had taken crack. The man repeated the same thing a couple of times before a naked woman exited the car. Ochoa described the woman as being disoriented and having visible injuries, with the side of her face looking like a "pumpkin." She was bleeding, and her eyes were shut. Ochoa called 911 and told the man to leave. Ochoa testified that he was afraid the man had a weapon. The woman began yelling and came to the passenger side of Ochoa's vehicle, scratching at the vehicle and screaming "no, no, no, no, no." Police later arrived on the scene to treat the woman and take her statement.

The victim, Vanessa Stubbs Gwin, who was thirty at the time of trial, testified that when she was seventeen, she was involved in a car accident and suffered a traumatic brain injury. Although she was capable of walking on her own, she often used a walker to prevent her from falling. She also testified that the brain injury left her with occasional memory loss. Stubbs testified that on the day of the attack, she was living with her father, with whom she had had a fight. She said that her father had gotten angry with her because she was being loud because she was excited about having a boyfriend. She left the house to visit her friend Angel, but she left Angel's house after half an hour because he wanted to sleep with her and she did not want to because she already had a boyfriend. She then went to a bar called the Bullpen, where she said

2

she had one drink and stayed for an hour and a half to two hours before she left. She did not bring her walker with her and she was starting to fall, so she took a break and stopped at a bus stop bench on her way back to the house. She saw a white car pass her, turn around, and then pass her again. The car stopped. She asked the driver for a ride and he said yes. She got into the passenger seat and told him her address, but she testified that "he was too messed up to even listen to it" and that he was acting "strange," not normal, and kept repeating himself many times. She testified that she suspected he was on ecstasy. When the driver passed her house, she told him to stop, but he "turned around rather fast so I couldn't get out" and told her that he wanted to show her something. Stubbs testified that the man kept driving even though she told him no until he drove the car back behind a building.

Stubbs testified that once they were parked behind the building, the driver began beating her and striking her on the left side of her head. She said he was taking off her clothes as he continued to beat her, but that he had trouble unbuttoning her pants, so she offered to unbutton them for him. He then raped her. She estimated that the man beat her for four to five hours. She said that eventually a security guard arrived, and she escaped the car naked. She testified that she did not want to remain in the car with the man during the attack.

Templeton took the stand in his own defense. During his disjointed, largely narrative-form testimony, Templeton stated that he was driving near the Lakewood Shopping Center when he saw Stubbs looking in the window of a federal halfway house at around 2:30 a.m. When he stopped, she got into his car. He offered her crack cocaine, but she did not take any. He said that she offered him oral sex, but then she bit his penis, at which point he reacted by hitting her, which led to a physical fight "for a couple of minutes." Templeton testified that after they stopped fighting, he tried to kiss her. Templeton admitted to licking Stubbs's vagina and touching her vagina with

3

his penis. He said he was unable to maintain an erection due to his "sickness."

Templeton testified that he had been formally diagnosed as schizophrenic and that from his own self-evaluation he believed he also suffered from depression, anxiety, and bipolar disorder. Templeton testified that he had five hours of sleep in five days' time and that he had drank ten Four Lokos and smoked crack over an unspecified period of time. He had not taken his schizophrenia medication for about two weeks. When describing his mental state that night, Templeton said: "I'm not justifying saying what I did wasn't wrong. I'm not saying that. All I'm saying is my mind wasn't right. I was evil. I was insane. I'm not saying I wasn't wrong. I was wrong. Assuming what happened, yeah, I was wrong. But by law, I was legally and mentally insane."

On cross-examination, the State questioned Templeton about a statement he made in a previous proceeding in which he said, "I knew I was wrong." Templeton admitted to making the statement, but said he felt coerced and pressured into making the statement to receive leniency or sympathy from the judge.

### *Procedural History*

After the trial court appointed counsel for Templeton, counsel filed a motion to withdraw, which was granted. Templeton's second appointed counsel requested a mental health exam, which the 384th District Court ordered on January 23, 2013. On February 14, 2013, Templeton's second counsel filed a motion to withdraw, stating that he and his client were "not communicating effectively." At this hearing, Templeton's second counsel and the trial court referred to a report finding Templeton competent to stand trial. The case then transferred back to the originating court. Templeton's second counsel's motion to withdraw was granted, and the trial court appointed Templeton a new lawyer. Templeton's third counsel filed another motion for a mental health exam

and requested that the trial court have a psychologist give Templeton an IQ exam. The second order was signed on May 20, 2013.

At a status hearing on December 5, 2013, Templeton's third counsel asked for a continuance to find a mental health expert to support Templeton's anticipated insanity defense. At this hearing, Templeton's third counsel mentioned that an examining physician found Templeton competent to stand trial. Later, Templeton's third counsel filed a motion to withdraw after Templeton both filed a grievance against him with the State Bar of Texas and began writing letters to the District Attorney's Office. Templeton's third counsel's motion to withdraw was granted, and the trial court appointed a fourth lawyer to represent Templeton.

The jury convicted Templeton of all charges. This appeal followed.

## DISCUSSION

Templeton advances three issues on appeal. In Issue One, Templeton argues that the trial court erred by finding him competent to stand trial without holding a separate trial on the issue of competency. In Issue Two, Templeton asserts that the jury's verdict finding him sane at the time of the offense was erroneous. Finally, in Issue Three, Templeton maintains that the State failed to prove he committed the offense of aggravated kidnapping beyond a reasonable doubt. We will begin with competency.

### *Competency to Stand Trial*

In Issue One, Templeton insists his due process rights were violated because he was entitled to, but did not receive, a separate trial on the issue of his competency to stand trial. We disagree. Templeton did not request a formal competency trial, meaning that the lack of a competency trial was not error and does not constitute a basis for appellate reversal.

A person is incompetent to stand trial if he does not have (1) sufficient present ability to

consult with his lawyer with a reasonable degree of rational understanding or (2) a rational as well as a factual understanding of the proceedings against him. TEX.CODE CRIM.PROC.ANN. art. 46B.003(a). Chapter 46B outlines the procedures and standards used in determining whether a defendant is incompetent to stand trial. Either the parties or the trial court may suggest on motion that the defendant may be incompetent to stand trial. *Id.,* art. 46B.004(a). If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial. *Id.*, art. 46B.004(b). On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. *Id.*, art. 46B.004(c). If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination "to determine whether the defendant is incompetent to stand trial in a criminal case." *Id.*, art. 46B.005(a).

As for the issue of trial, the CCP states that a court shall hold a trial under Subchapter C before determining whether the defendant is incompetent to stand trial on the merits, unless:

(1) neither party's counsel requests a trial on the issue of incompetency;

(2) neither party's counsel opposes a finding of incompetency; and

(3) the court does not, on its own motion, determine that a trial is necessary to determine incompetency.

TEX.CODE CRIM.PROC.ANN. art. 46B.005(b)-(c).

Here, the trial court did not on its own motion determine that a trial was necessary, nor is there any evidence in the record that Templeton requested a trial on the issue of competency to stand trial or opposed the trial court's finding. As such, the trial court did not err by foregoing a trial and deciding the competency issue summarily based on an informal inquiry. *See id*. Since

6

Templeton does not challenge the substance of the trial court's competency finding—only the lack of a trial on competency—our inquiry into this area is complete.

Issue One is overruled.

### *Insanity*

In Issue Two, Templeton argues that the jury erred by failing to find him insane at the time of the offense. We disagree.

### *Standard of Review*

Criminal defendants are presumed sane; thus, the burden of proof and of persuasion is on the defendant to establish the affirmative defense of insanity by a preponderance of the evidence. *Meraz v. State*, 785 S.W.2d 146, 150 (Tex.Crim.App. 1990); TEX.CODE CRIM.PROC.ANN. art. 46C.153(a)(2). A person is insane if, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong. TEX.PENAL CODE ANN. § 8.01. Under Texas law, "wrong" in this context means "illegal." *Ruffin v. State*, 270 S.W.3d 586, 592 (Tex.Crim.App. 2008). "Thus, the question for deciding insanity is this: Does the defendant factually know that society considers this conduct against the law, even though the defendant, due to his mental disease or defect, may think that the conduct is morally justified?" *Id.* If a defendant is insane, he cannot be convicted of the criminal offense. *Id.*

The issue of a defendant's sanity is tried to a jury if the issue of insanity is supported by competent evidence. TEX.CODE CRIM.PROC.ANN. art. 46C.151(a). "The issue of insanity is not strictly medical in nature, but involves legal and ethical considerations as well." *Reyna v. State*, 116 S.W.3d 362, 367 (Tex.App.—El Paso 2003, no pet.). "An individual may be medically insane, yet legally retain criminal responsibility for that crime where a mental condition does not prevent defendant from distinguishing right from wrong." *Id.* "In determining the issue of legal insanity,

7

the trier of fact is called upon to join the non-medical components in deciding the ultimate issue of culpability." *Id.*

The interplay between the State's burden of proving its case beyond a reasonable doubt and the showing the defendant needs to make to establish an affirmative defense like insanity implicates several standards of review. The State bears the burden of proving its case beyond a reasonable doubt at all times, but although the Texas Court of Criminal Appeals rejected factual sufficiency review of merits evidence in criminal cases in favor of the unitary *Jackson v. Virginia*[2] beyond-a-reasonable-doubt legal sufficiency standard when reviewing the elements of an offense that the State must prove to obtain a conviction, the high court has retained the civil factual and legal sufficiency standards of review with respect to appellate review of a defendant's affirmative defenses, as the standards that govern Texas civil proceedings still apply to the rejection of an affirmative defense. *See Matlock v. State*, 392 S.W.3d 662, 664-65 (Tex.Crim.App. 2013). Thus, in reviewing the jury's verdict and implied finding against Templeton's insanity defense (on which Templeton bore the burden of proof), we employ the civil legal and factual sufficiency standards.

Under the civil legal sufficiency standard of review, when reviewing the evidence to support an adverse finding on which the defendant bore the burden of proof, we look for evidence supporting the jury's implied finding and disregard all evidence to the contrary. *Id.* at 669. If there is no evidence supporting the finding, we must search the record to see if the defendant established his defense as a matter of law. *Id.* at 669-70. "Only if the appealing party establishes that the evidence conclusively proves his affirmative defense and that no reasonable jury was free to think otherwise may the reviewing court conclude that the evidence is legally insufficient to support the jury's rejection of the defendant's affirmative defense." [Internal quotations and

---

[2] 443 U.S. 307 (1979)

citations omitted]. *Id*. at 670. If the defendant establishes his affirmative defense (in this case, insanity) as a matter of law, we must render an acquittal. *Id*.

Under factual sufficiency review, we must determine whether, considering the record evidence as a whole in a neutral light, the jury's adverse finding on the affirmative defense was so "against the great weight and preponderance" of the evidence that the verdict was "manifestly unjust." *Matlock*, 392 S.W.3d at 671. "[A]n appellate court may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Id*. If we find "that the evidence supporting the affirmative defense so greatly outweighs the State's contrary evidence" such that the verdict is manifestly unjust, we may reverse and remand for a new trial, but we may not render an acquittal. *Id*. at 672.

*Analysis*

Neither the State nor the defense called any mental health experts to testify regarding Templeton's mental state or any insanity defense.[3] However, Templeton points to three things that he maintains establish his insanity defense:

- Defense Exhibit #1 was a discharge summary dated June 17, 2005, from MHMRA of Harris County. The discharge form lists Templeton's previous mental health history. On appeal, Templeton highlights six things mentioned in the discharge summary:

  1. Clinical disorders including schizoaffective disorder;

  2. Learning disorder;

---

[3] "Expert witnesses, although capable of giving testimony that may aid the jury in determining the issue, do not dictate the result." *Reyna*, 116 S.W.3d at 367.

9

3. Epilepsy;

4. He suffered a closed head injury at the age of 10 followed by a generalized seizure disorder;

5. He began to have mental problems at the age of 18 when he began to hear voices;

6. He suffers from paranoia.

- Templeton himself testified that he had been on psychiatric medication for forty years, that he did know his actions were wrong at the time of incident, and that he was insane.

- The victim testified that Templeton "wasn't acting normal" and that he was "too messed up to even listen" to her address.

The State in turn directs our attention to several purported admissions that Templeton made during his rambling, narrative testimony in which he acknowledged that he knew what he did was wrong; the State asserts that these comments militate against a finding that Templeton did not know the difference between right and wrong. Apart from Templeton's alleged admissions, the State contends that at most, Templeton can only show sleep deprivation and crack cocaine intoxication, which do not constitute insanity. *See De La Garza v. State*, 650 S.W.2d 870, 875 (Tex.App.—San Antonio 1983, pet. ref'd)(denying insanity jury charge based on sleep deprivation/intoxication).

Taking the evidence adduced at trial, we find that the jury's verdict that Templeton was sane at the time of the offense was both supported by more than a scintilla of evidence and was not manifestly unjust. The State is correct that Templeton's admission to voluntarily intoxication cannot form the basis for an insanity defense, and Templeton's description of his state of mind and knowing the difference between right and wrong waivered both in his direct testimony and when confronted with prior statements in which he acknowledged what he did was wrong. This

10

vacillation on knowledge of right and wrong at the time of the offense created a fact issue ripe for jury resolution. Further, although Templeton did establish a history of mental illness, mental illness alone cannot form the basis for an insanity defense, and Templeton did not offer any expert that could have bolstered his plea (although, as we noted above, an expert is not conclusive on the issue of insanity). Finally, the jury had the opportunity to assess Templeton's credibility and demeanor. Given that this case hinges largely on the jury's assessment of Templeton's credibility and demeanor, and given that appellate courts hesitate to intervene when a jury decision turns on indelible demeanor issues not apparent from a cold record, we find that a reasonable jury could have properly rejected Templeton's insanity defense. Templeton did not establish insanity as a matter of law.

Issue Two is overruled.

### *Legal Sufficiency*

Finally, in Issue Three Templeton asserts that the State failed to prove the abduction element of aggravated kidnapping beyond a reasonable doubt because (1) there was insufficient evidence showing Stubbs was restrained or forced to stay in the vehicle and (2) there was insufficient evidence showing the place where Templeton took Stubbs was a place where she was "not likely to be found." We disagree.

### *Standard of Review*

On legal sufficiency review, we assess all trial evidence "in the light most favorable to the prosecution," to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We review all record evidence—direct or circumstantial, properly admitted or not. *Clayton*, 235 S.W.3d at 778. "Each

11

fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We measure legal sufficiency based on the statutory elements of the offense as modified by the allegations set out in the indictment. *Malik v. State*, 953 S.W.2d 234, 239 (Tex.Crim.App. 1997).

In this procedural posture, we are not permitted to sit as "thirteenth juror" and substitute our judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010), *Goodman v. State*, 66 S.W.3d 283, 286 n.4 (Tex.Crim.App. 2001). Even so, we act as a procedural failsafe against irrational verdicts, and we may reverse a conviction on legal sufficiency grounds where no rational juror could find guilt beyond a reasonable doubt based on the evidence presented at trial. *Clayton*, 235 S.W.3d at 778. This encompasses both situations in which the State has failed to prove an essential element of the crime as a matter of law and situations in which some evidence exists on every element, but no reasonable person could convict in light of the state of evidence as a whole, even when viewed most favorably to the prosecution. *See Jackson*, 443 U.S. at 320 (constitutional legal sufficiency standard in criminal cases higher than "mere modicum" evidence standard); *Brooks v. State*, 323 S.W.3d 893, 906–07 (Tex.Crim.App. 2010).

Where the evidence is legally insufficient to support the defendant's conviction, and reformation to a lesser-included offense is not appropriate, the court must render a judgment of acquittal. *Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex.Crim.App. 2014); *Casanova v. State*, 383 S.W.3d 530, 532–33 (Tex.Crim.App. 2012).

*Analysis*

"A person commits an offense if he intentionally or knowingly abducts another person with the intent to . . . inflict bodily injury on him or violate or abuse him sexually." TEX.PENAL CODE

12

ANN. § 20.04(a)(4). As used in the jury charge of this case, "abduct" means to restrain a person with the intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found. TEX.PENAL CODE ANN. § 20.01(2)(A).

"The offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found." *Laster v. State*, 275 S.W.3d 512, 521 (Tex.Crim.App. 2009). "Intent to prevent liberation by secreting or holding can be inferred when a victim is held in an automobile being driven on city streets." [Internal quotations omitted]. *West v. State*, 406 S.W.3d 748, 759 (Tex.App.—Houston [14th Dist.] 2013, pet. ref'd).

Here, we cannot say that the jury's verdict on aggravated kidnapping was irrational. Templeton picked Stubbs up in his car at an early hour of morning while Stubbs was alone on a bus bench. Stubbs testified that Templeton drove past the address she gave him and drove in a way that kept her from getting out of the car. Once the car reached the area behind a building in the industrial park that Ochoa testified should have been closed off to the public at that time of night, Templeton repeatedly and violently beat Stubbs and sexually assaulted her. Finally, Stubbs herself testified that she did not want to be in the car with Templeton as he attacked her. Based on these facts, the jury could rationally infer beyond a reasonable doubt that Templeton restrained Stubbs with the intent both to secrete or hold her in a place where she was unlikely to be found and to violate or abuse Stubbs sexually. The jury could also rationally infer that Templeton prevented Stubbs from leaving the vehicle. The evidence was legally sufficient to support the conviction.

Issue Three is overruled.

## CONCLUSION

13

The judgment of the trial court is affirmed.


April 24, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)